**In the Matter of the Finding of Contempt Against Troy CUDWORTH During the Proceedings In re**

**State of Indiana,**

v.

**Bruce Waldon,**

**Troy Cudworth, Appellant–Defendant,**

v.

**State of Indiana, Appellee–Plaintiff.**

No. 79A04–0312–CR–627.

Court of Appeals of Indiana.

Oct. 6, 2004.

Steven Knecht, Vonderheide & Knecht, P.C., Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Troy Cudworth ("Cudworth") was held in contempt in Tippecanoe Superior Court. Cudworth appeals, raising the following restated issues for review:

I. Whether the trial court's finding of contempt was erroneous; and

II. Whether Cudworth's sentence is appropriate.

Concluding the trial court did not err and Cudworth's sentence is appropriate, we affirm.

### Facts and Procedural History

On June 4, 2002 and August 28, 2002, the State filed a forty-count information against Bruce Waldon ("Waldon"). Count Thirty–Six of this information alleged a RICO violation and named Cudworth as a participant in Waldon's criminal enterprise.

When Waldon's trial began on October 20, 2003, Cudworth was facing pending burglary charges in Clinton County that were related to Waldon's alleged RICO violation. During Waldon's trial, the State called Cudworth to testify. When Cudworth asserted his privilege against self-incrimination, the State requested the trial court to grant Cudworth use immunity. Cudworth objected, contending that the Tippecanoe Superior Court did not have jurisdiction to grant use immunity for a Clinton County trial. The trial court overruled Cudworth's objection, explained use immunity to Cudworth, and ordered Cudworth to testify. Cudworth refused to testify and was found in contempt.

On the following day, the trial court brought Cudworth into court to give him an opportunity to purge himself of his contempt. In so doing, the trial court warned Cudworth that it was likely the last time he would have an opportunity to purge his contempt because his testimony would no longer be needed on the following day. Cudworth maintained his refusal and received a three-year sentence.

At 11:45 a.m. on the day following his sentence for contempt, Cudworth's attorney informed the court Cudworth was willing to testify. The State had not rested at this point. However, the State indicated it was too late for Cudworth's testimony because it was on its last witness and had dismissed a witness whose testimony was rendered useless because of Cudworth's refusal.

At 1:00 p.m., Cudworth filed a notice of willingness to testify and requested an emergency hearing. At this point, the State had rested, and the trial court had granted a request to strike reference to Cudworth and Clinton County from Waldon's RICO count. The trial court denied Cudworth's request. Waldon was eventually convicted of twenty-one of his charged counts, including his RICO count.

On October 29, 2003, Cudworth filed a motion to reconsider. The trial court affirmed its decision to hold Cudworth in contempt but reduced Cudworth's sentence to six months upon its conclusion that it could not sentence him to a longer sentence without affording him the right to a jury. Cudworth now appeals.

### I. Contempt

Cudworth contends the trial court erred when it found him in contempt because it had no jurisdiction under Indiana Code section 35–37–3–3 to grant use immunity for a Clinton County trial. When reviewing a finding of contempt, we accept as true the statement entered by the trial court and will only interfere with the finding where it clearly appears the acts do not constitute contempt. *In re Nasser*, 644 N.E.2d 93, 95 (Ind.1994). Contemptuous acts are those in opposition

to a court's authority, justice, and dignity. *Id.* Any act that tends to deter the court from the performance of its duties may support a finding of contempt. *Id.*

■ "Our objective in statutory construction is to determine and effect the intent of the legislature." *Matter of Lawrance*, 579 N.E.2d 32, 38 (Ind.1991). "Where possible, every word must be given effect and meaning." *Hall Drive Ins. Inc. v. City of Fort Wayne* 773 N.E.2d 255, 257 (Ind.2002). We must assume the language employed in a statute was used intentionally. *Burks v. Bolerjack*, 427 N.E.2d 887, 890 (Ind.1981).

Indiana Code section 35–37–3–3 states in part:

(a) Upon request of the prosecuting attorney, the court shall grant use immunity to a witness. The court shall instruct the witness, by written order or in open court, that any evidence the witness gives, or evidence derived from that evidence, may not be used in *any criminal proceeding* against that witness, unless the evidence is volunteered by the witness or is not responsive to a question by the prosecuting attorney. The court shall instruct the witness that he must answer the questions asked and produce the items requested.

\* \* \*

(c) If a witness refuses to give the evidence after he has been granted use immunity, the court may find him in contempt.

Ind.Code § 35–37–3–3 (1998) (emphasis added).

A witness may be compelled to testify where a grant of immunity places the witness in substantially the same position he would be in had he exercised his right to remain silent. *Furrer v. State*, 709 N.E.2d 744, 746 (Ind.Ct.App.1999) (citing *Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)). Cudworth's immunity provided him with protection co-extensive with his privilege against self-incrimination—including protection against the use of his testimony in Clinton County. Accordingly, the trial court was permitted to compel Cudworth to testify under the threat of contempt.

■ Cudworth also claims he purged himself of his contempt when he offered to testify. We disagree. Though Cudworth offered to testify before the State had rested, he did not do so before the damage resulting from his two separate refusals had been done. When the trial court brought Cudworth into court to offer him a chance to purge himself, Cudworth was warned that it was likely his last opportunity to do so. Furthermore, when Cudworth offered to testify, the State "had literally packed up the evidence that Mr. Cudworth was related to," was on its last witness, and had dismissed a witness whose testimony was rendered irrelevant as a result of Cudworth's refusal. Cudworth's failure to heed the trial court's warning and his tardiness precluded the possibility of purging his contempt.

---

1. We also take notice of the State's apt notation that the trial court's grant of use immunity binds even a federal court and, thus, certainly binds Clinton County. Br. of Appellee at 8–9 (citing *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52, 79–80, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964)).

■ "Any criminal proceeding" indicates the legislature intended for use immunity to apply to counties outside the county of the issuing court, and nothing in the statute contradicts this indication.[1] Accordingly, Cudworth's contention must be rejected.

## II. Inappropriate Sentence

 Cudworth requests this court to reduce his sentence. Appellate courts have the constitutional authority to revise a sentence if, after consideration of the trial court's decision, the court concludes the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Asher v. State*, 790 N.E.2d 567, 570 (Ind.Ct.App.2003).

At the heart of Cudworth's request is his claim that his six-month sentence is the maximum sentence the trial court was allowed to give him in the absence of a jury verdict.[2] However, had Cudworth had access to a jury, he would have been exposed to a more severe sentence. The lack of a jury adjudication does not speak to Cudworth's character or the nature of Cudworth's offense. Accordingly, Cudworth's claim that he received the maximum possible sentence—though true—is somewhat deceiving.

Cudworth's repeated refusal to testify had a disruptive effect on Waldon's trial and was an affront to the dignity of the trial court. The nature of Cudworth's contempt renders his six-month sentence appropriate.

### Conclusion

The trial court did not err in finding Cudworth in contempt and refusing to reconsider. Further, Cudworth's six-month sentence was appropriate.

Affirmed.

DARDEN, J., and FRIEDLANDER, J., concur.

---

**2.** Because Cudworth concedes he was not entitled to a jury determination on the basis of a six-month contempt sentence, the Supreme Court's recent decision in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), is inapplicable to the issue at bar.